UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHANNON L. POTTER,

    Plaintiff,

v.                                                            CAUSE NO. 3:19-CV-722-DRL-MGG

WARDEN GALIPEAU *et al.*,

    Defendants.

## OPINION AND ORDER

Shannon L. Potter, a prisoner without a lawyer, filed an amended complaint. A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

In the complaint, Mr. Potter alleges that, on August 20, 2019, the Westville E-Squad arrived at his dormitory and ordered inmates to lie face down on their beds. Mr. Potter complied but laughed when Lieutenant Pomrod ordered him to keep his face down when Mr. Potter turned his head. In response, Lieutenant Pomrod hit Mr. Potter on the back of his head, pushed his head into the mattress, and threw him on the ground, causing him to hit his head on the ground. The E-Squad escorted Mr. Potter to the dayroom and to a holding cell in an uncomfortable position and caused him to trip on the way. During the escort, Mr. Potter asked Captain Farley if they could talk, but he declined. In the

holding cell, Mr. Potter saw Warden Galipeau walk by. When Mr. Potter asked for medical attention, Officer Childers escorted Mr. Potter to the medical unit in his socks, which caused his socks to get wet. However, Mr. Potter decided to leave the medical unit before receiving care because he was wet and tired.

On August 21, Mr. Potter asked Sergeant Flakes for a meeting. Officer Davis told Mr. Potter that Sergeant Flakes agreed to meet him, but Sergeant Flakes never arrived at the meeting. Mr. Potter explained what happened to Caseworker Jones, and also asked Officer Davis to call Sergeant Flakes. After seven hours of waiting, Sergeant Flakes brought him to a room with Lieutenant Creasy and an internal affairs officer. Mr. Potter expressed his concerns regarding the use of force incident. He asked for photographs of his injuries, but Lieutenant Creasy refused. Captain Farley walked into the room and asked Mr. Potter questions. Sergeant Johnson and Unit Team Manager Watts also entered the room. The internal affairs officer told Mr. Potter that they would not do anything to address his complaint. Mr. Potter was told that he should have complied with the orders and should not have laughed. They also asked him about his new tattoos. Lieutenant Creasy told Mr. Potter that he should have contacted internal affairs and that he had three conduct reports in his property box and that he would not be issued a conduct report. After leaving the room, Mr. Potter verified with Captain Farley that he would not be issued a conduct report, but he discovered a shampoo bottle had leaked in his property box.

On August 22, Mr. Potter's cellmate told Mr. Potter that Warden Galipeau said that Mr. Potter should abandon his complaint and asked Lieutenant Cornet if Mr. Potter had spit on Lieutenant Pomrod. According to Mr. Potter's cellmate, Lieutenant Cornet falsely replied that he had and that Mr. Potter had headbutted a correctional officer, who was placed on medical leave.

Mr. Potter asserts an Eighth Amendment claim for excessive force against Lieutenant Pomrod and the Westville E-Squad. The "core requirement" for an excessive force claim is that the defendant

2

"used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Based on the allegations, Mr. Potter may proceed against Lieutenant Pomrod on an Eighth Amendment claim of excessive force. However, Mr. Potter may not proceed against the Westville E-Squad because it is not an individual or other suable entity but a group of individuals that must be separately identified and named as defendants.

Mr. Potter represents that he became concerned that he would be retaliated against for complaint about the use of force incident after the meeting with Warden Galipeau, Lieutenant Creasy, Captain Farley, Sergeant Flakes, Sergeant Johnson, and Unit Team Manager Watts on August 21, 2019. "To prevail on his First Amendment retaliation claim, [a plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). While Mr. Potter may disagree with how correctional staff responded to his complaint, the allegations do not suggest that these defendants engaged in conduct that would likely deter him from engaging in First Amendment activity. Therefore, he may not proceed against these defendants.

Finally, the court is unclear on why Mr. Potter named Officer Childer, Officer Davis, or Caseworker Jones as defendants. The allegations in the complaint do not suggest that these defendants violated Mr. Potter's constitutional rights or did anything beyond accommodating Mr. Potter's requests. Therefore, he may not proceed against them.

For these reasons, the court:

3

(1) GRANTS Shannon L. Potter leave to proceed against Lieutenant Pomrod on an Eighth Amendment claim for money damages for using excessive force against him on August 20, 2019;

(2) DISMISSES the Westville E-Squad, Warden Galipeau, <u>Lieutenant Creasy,</u> Captain Farley, Sergeant Flakes, Sergeant Johnson, Unit Team Manager Watts, Officer Childer, Officer Davis, and Caseworker Jones;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on) Lieutenant Pomrod at the Indiana Department of Correction with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d); and

(5) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Lieutenant Pomrod to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Shannon L. Potter has been granted leave to proceed in this screening order.

SO ORDERED.

February 3, 2020 *s/ Damon R. Leichty*
Judge, United States District Court